UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jacob Page Drewry and Anna Downey, | ) | |
| | ) | No. 11 C 1323 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Marshall Keltz, Individually and as | ) | |
| Trustee of the William P. Drewry Trust, | ) | |
| Dated December 20, 1988, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jacob Page Drewry and Anna Downey filed this action against Marshall Keltz, successor trustee of the William P. Drewry Trust, both individually and in his capacity as trustee. Before the Court is Plaintiffs' Motion for Injunctive Relief and Accounting. R. 33. For the reasons explained below, Plaintiffs' Motion for Injunctive Relief and Accounting is granted.

**Background**

William P. Drewry ("William") established the William P. Drewry Trust (the "Trust") on December 20, 1988. William acted as the sole trustee of the Trust until his death on October 19, 2009.[1] After William's death, his partner, Marshall Keltz, became the successor trustee of the Trust.

---

[1] William amended the "Trust Agreement" several times before his death. At the time of his death, the operative Trust Agreement was the Fourth Amended and Restatement of the William P. Drewry Declaration of Trust Dated December 20, 1988, which was executed on January 25, 2008. R. 1 at Ex. 1.

1

In addition to his trustee duties, Keltz is also a named beneficiary of the Trust. The Trust Agreement provides that Keltz would receive a $100,000 payment immediately after William's death, Trust Agreement at Art. II, § 2, and also provides that "[t]he Trustee shall pay to or for the benefit of [Keltz] so much of the income and principal from the remaining balance of the trust assets, during [Keltz's] lifetime as the Trustee deems necessary for [Keltz's] health, maintenance, and support in the Trustee's sole discretion." *Id.* at Art. II, § 3.

The Trust Agreement then provides that after Keltz's death,

> the Trustee shall allocate fifty percent (50%) of the rest and residue of the remaining trust estate to create thirteen (13) equal shares as follows:
>
> (1)  Guy H. Drewry, IV;
> (2)  Anna Christine Drewry;
> (3)  John Northington Drewry;
> (4)  Michael Gardner Drewry;
> (5)  Jacob Page Drewry;
> (6)  Anna Christine Downey;
> (7)  Laura Downey East;
> (8)  Richard L. Downey, Jr.;
> (9)  Patricia Kathleen Downey;
> (10) Audrey Garner McCulloch;
> (11) Claire Louise McCulloch;
> (12) Amy Sara Cardella; and
> (13) Ira Sean Keltz.
>
> The Trustee shall distribute said shares as soon as practical following the death of both [Keltz] and [William].
>
> In the event a beneficiary named in this Section predeceases [Keltz] or [William], the share created for that deceased beneficiary shall be reallocated to the deceased beneficiary's descendants, *per stirpes*. In the event a named beneficiary predeceases [Keltz] or [William] and leaves no descendants surviving him or her, then the share created for said deceased beneficiary shall

> be reallocated in equal shares to the remaining beneficiaries under this article.

*Id.* at Art. III, § 1. The trustee is directed to distribute the remaining fifty percent to several charitable organizations. *Id.* at Art. III, § 2.

On February 24, 2011, Jacob Page Drewry and Anna Downey, two of the beneficiaries named in Article III, Section 1 of the Trust Agreement, filed this action to obtain an accounting.[2] The action is based on Article V, Section 2 of the Trust Agreement, which provides that "[e]ach Successor Trustee shall render an account of his/her receipt and disbursements and a statement of assets to each adult vested beneficiary." Since William's death on October 19, 2009, despite requests to do so, Keltz has not provided an accounting to the other named Trust beneficiaries.

## Analysis

To obtain a preliminary injunction, "a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied, and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). "If the moving party meets these threshold requirements, the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* Moreover, "[i]f the plaintiff does show some likelihood of success, the court must then determine how likely that success is. . . . The more likely the

---

[2] Plaintiffs also sought to oust Keltz as trustee. In its January 31, 2012 Memorandum Opinion and Order, R. 16, the Court (Judge Dow) dismissed that claim because it falls under the probate court's jurisdiction.

3

plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984).

The Court therefore begins with Plaintiffs' likelihood of success on the merits. Under the terms of the Trust Agreement, Plaintiffs are entitled to an accounting if they are "adult vested beneficiaries." Trust Agreement at Art. V, § 2. The parties dispute whether Plaintiffs' interests in the Trust are "vested." Keltz currently has a life interest in the Trust that covers expenses that the trustee (also Keltz) deems necessary for his health, maintenance, and support. Plaintiffs only receive their share of the remainder of the Trust after Keltz's death.

The Court looks to Illinois law to resolve this issue. *See* Trust Agreement at Art. IX (providing that the Trust Agreement shall be governed by and interpreted under Illinois law). "Illinois favors the vesting of estates generally unless a different intention is manifested by the grantor." *First Galesburg Nat'l Bank & Trust Co. v. Robinson*, 500 N.E.2d 995, 996 (Ill. App. Ct. 1986) (citing *Barker v. Walker*, 85 N.E.2d 748, 751 (Ill. 1949)). As a general rule,

> [a] remainder is vested if there is a person in being ascertained and ready to take who has a present right of future enjoyment, one which is not dependent upon any uncertain event or contingency. A contingent remainder is one limited to take effect either to an uncertain person or upon an uncertain event.

*Dauer v. Butera*, 642 N.E.2d 848, 850 (Ill. App. Ct. 1994) (citations omitted). *See also Dyslin v. Wolf*, 96 N.E.2d 485, 490 (Ill. 1950) ("[W]henever the person who is to succeed to the estate in remainder is in being and is ascertained, and the event

4

which by express limitation will terminate the preceding estate is certain to happen, the remainder is vested.").

In *Dauer*, the court explained that "[d]eath is an event which is certain to occur, and thus the Illinois Supreme Court and this court have repeatedly held that a bequest merely postponed until after the death of a life tenant is a vested remainder." 642 N.E.2d at 851 (citing *McDonough Cnty. Orphanage v. Burnhart*, 125 N.E.2d 625, 633 (Ill. 1955); *Dyslin*, 96 N.E.2d 485; *Fleshner v. Fleshner*, 39 N.E.2d 9, 11 (Ill. 1941); *Oak Park Trust & Savings Bank v. Baumann*, 438 N.E.2d 1354, 1358 (Ill. App. Ct. 1982)). For example, in *Oak Park Trust*, 438 N.E.2d at 1355, much like William here, the decedent set up a trust providing that the trustee would pay costs deemed "necessary and desirable for [the] medical care, comfortable maintenance and welfare" of her husband and son, and that after her husband's death, the trust's assets would be distributed to her son. The court held that the son's remainder interest was fully vested: "the phrase 'upon death' does not imply the creation of a conditional interest. Such language merely postpones the enjoyment of an interest which vests immediately." *Id.* at 1358.

The same is true here. Plaintiffs Jacob Page Drewry and Anna Downey are in being and are ascertained—they are listed by name along with 11 other individuals in Article III, Section 1 of the Trust Agreement. The fact that they have to wait until Keltz's death in order to receive their remainder distributions from the Trust does not render their interests contingent.

Keltz provides no authority to the contrary. Indeed, Keltz does not offer any argument that Plaintiffs' interests in the Trust are not "vested" under Illinois law. Instead, Keltz merely argues that when William revised the Trust Agreement for the last time in 2008, he changed the parties who have a right to an accounting from "each adult beneficiary" to "each adult *vested* beneficiary." R. 19 at 6-7 (emphasis in original). But as discussed above, Plaintiffs are vested beneficiaries under Illinois law. As a result, this revision to the Trust Agreement does not help Keltz. Keltz also argues that if the Trust Agreement is silent, the Court should turn to the Illinois Trust and Trustees Act, 760 ILCS 5/1 *et seq.*, to determine which parties have a right to an accounting. But again, the Trust Agreement is not silent; it provides that "adult vested beneficiaries" are entitled to an accounting, and Plaintiffs are adult vested beneficiaries under Illinois law.

Finally, Keltz argues that even if Plaintiffs are "adult vested beneficiaries" entitled to an accounting, their lawsuit is foreclosed by Article V, Section 3 of the Trust Agreement, which provides that "[n]o Trustee wherever serving shall be required to give bond or surety or be appointed by or account for the administration of any trust to any court." Keltz therefore argues that the Trust Agreement "explicitly denies the right of any beneficiary to seek an accounting involving court supervision." R. 19 at 6. The limited relief sought by Plaintiffs here does not conflict with Article V, Section 3. Plaintiffs merely seek to compel Keltz to comply with the terms of the Trust Agreement and provide them with the required accounting. Apart from requiring Keltz to provide an accounting *to Plaintiffs*, this Court would

6

not supervise Keltz's administration of the Trust nor require Keltz to "account for the administration of [the] trust *to [the] court*." Moreover, if Keltz were correct that Article V, Section 3 precluded any and all actions seeking an accounting, there would be no remedy for the right established in Section 2. The Court declines to interpret the Trust Agreement in such an inconsistent and illogical manner.

Plaintiffs are therefore almost certain to prevail on the merits of their claim for an accounting. Plaintiffs are vested beneficiaries under Illinois law, and Article V, Section 2 of the Trust Agreement expressly provides that "[e]ach Successor Trustee shall render an account of his/her receipt and disbursements and a statement of assets to each adult vested beneficiary." Because Plaintiffs are almost certain to prevail on the merits, they do not have to make as strong a showing that the balance of harms weighs in their favor. Nonetheless, the Court finds that Plaintiffs have established irreparable harm and that the balance of harms weighs in favor of granting a preliminary injunction at this time.

Keltz argues that there is no irreparable harm because Plaintiffs' potential injuries are purely economic. Although the availability of money damages generally cuts against granting an injunction, courts have recognized irreparable harm where potential dissipation of assets threatens a plaintiff's ability to be made whole. *See, e.g., SEC v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995); *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 U.S. Dist. LEXIS 91149, at *24 (N.D. Ill. Nov. 10, 2008). If Keltz is dissipating Trust assets, a claim for money damages, potentially years down the road, would be a hollow remedy. Keltz suggests that Plaintiffs can only

7

speculate that he is dissipating Trust assets, but that is the entire point of an accounting. William died more than three years ago and Keltz has yet to provide an accounting to the other Trust beneficiaries, as the Trust Agreement expressly requires.[3]

Keltz also argues that Plaintiffs' delay in filing this action—15 months after William's death—defeats their claim of irreparable harm. The Court disagrees. As Plaintiffs note, they first attempted to resolve this dispute without litigation and then filed a prior action against Keltz in state court. Moreover, the concerns raised by Plaintiffs in this action would not have arisen immediately upon William's death. To the contrary, the accounting sought by Plaintiffs relates to how Keltz has been administering the Trust since he took over as trustee in late 2009. This is an ongoing issue that would understandably raise increasing concerns as Keltz refused to provide the accounting required by the Trust Agreement.

On the other side of the scale, Keltz does not identify any harm, irreparable or otherwise, if he were required to provide an accounting. As a result, the balancing tips decidedly towards granting a preliminary injunction. Indeed, the burden on Keltz is minimal. And although Keltz complains about a "mandatory" injunction that would require affirmative steps on his part, Keltz himself accepted the duty to provide accountings when he assumed his position as successor trustee

---

[3] Plaintiffs do have grounds for suspicion. First, of course, Keltz has refused to provide an accounting as the Trust Agreement requires. Second, in 1997, the State of Michigan revoked Keltz's license to practice law after he failed to return client funds, among other violations. *See* Attorney Discipline Board Notice of Revocation and Restitution, Marshall Keltz, Case Nos. 96-271-GA; 97-5-FA.

and the fiduciary duties that go along with it.[4] Those duties are especially important because of the potential conflicts arising from Keltz's dual roles as both the trustee and the beneficiary receiving payments from the Trust that he deems necessary for his own health, maintenance, and support.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Injunctive Relief and Accounting, R. 33, is granted. Within 30 days, Marshall Keltz shall provide to Plaintiffs an accounting of his receipts and disbursements on behalf of the Trust and a statement of Trust assets from October 19, 2009 to the present. Keltz has not requested that Plaintiffs be required to post bond pursuant to Fed. R. Civ. P. 65(c), and the Court finds that no bond is required because Keltz has not identified any harm if he were wrongly required to provide an accounting.

This matter is set for a status hearing on April 16, 2013 at 9:00 a.m. for the parties to advise the Court on the status of Keltz's compliance with this order and to discuss whether any further proceedings are necessary.

ENTERED:

_/s/ Thomas M. Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: March 6, 2013

---

[4] Keltz did not have to accept the position; under Article V, Section 1 of the Trust Agreement, he could have refused and left those duties to Harris Trust & Savings Bank or William's niece, Patricia D. McCulloch.